UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:07-CR-93 |
| V. ) | |
| ) | |
| MAURICE TRAVON JOHNSON ) | |

**REPORT AND RECOMMENDATION**

Defendant is indicted for (1) being a convicted felon in possession of a firearm and ammunition; (2) possession of crack cocaine with the intent to distribute; (3) possession of Alprazolam with the intent to distribute; (4) possession of Oxycodone with the intent to distribute; and (5) using an carrying a firearm during and in relation to a drug trafficking offense.

All the evidence against the defendant, - the firearm, ammunition, and drugs, - were obtained as a result of defendant's detention and subsequent search on April 18, 2007, by two officers of the Newport Police Department. Defendant has filed a motion to suppress this evidence (Doc. 18), asserting that there was no basis to stop and detain defendant in the first instance, as a result of which all fruits of that detention and search should be suppressed. This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on May 16, 2008.

Only two witnesses testified at the suppression hearing: Sgt. Scott Lamb of the

Newport Police Department, and Newport Police Patrol Officer Nick Parton. The facts are as follows:

On April 14, 2007, Sgt. Lamb and Officer Parton were working the night shift, 9:00 p.m. until 5:00 a.m. At 4:00 a.m., the police department received a call from the 911 dispatcher regarding a phone call to 911 from a Newport citizen. The call was as follows:

> 911: Where is your emergency?
> Caller: 348 Whitson Drive.
> 911: What's the problem there?
> Caller: Um. They've finally had to come over here a couple of times before because I had some people coming by my house and they're back.
> 911: What kind of vehicle are they in?
> Caller: They've got it parked now. They're outside their vehicle walking around my house.
> 911: And what kind of vehicle is it?
> Caller: A Cadillac. Uh, a blue Cadillac.

The substance of that call was relayed by the 911 dispatcher to the Newport Police Department. Sgt. Lamb testified that he was told by his police dispatcher that 911 had reported "Suspicious people walking around apartment." The address provided - 348 Whitson Drive - is a residential dwelling within the Newport Housing Authority property, and the particular area in question was known by these officers to be a high crime area, specifically, an area known for its drug trafficking.

Sgt. Lamb had responded to a call to this same address earlier that evening (i.e., April 13, 2007), as well as the day before; the caller had complained that someone was bothering her. As noted in the recording of the 911 call that was made at 4:00 a.m. on April 14, 2007, the caller reported that she had made prior calls to the police department regarding people

walking around her house and those people had returned.

Sgt. Lamb and Officer Parton, in their respective vehicles, responded to 348 Whitson Drive, which is an apartment building located at the intersection of Whitson Drive and Buda Street. When the two officers arrived, they observed a blue Cadillac, with no one in it, parked on Whitson Drive, directly across the street from the dwelling designated 348 Whitson Drive. Sgt. Lamb called in the tag number of the Cadillac to determine to whom it was registered.[1] More or less at the same time, Sgt. Lamb and Officer Parton were looking around the area for anyone who might have been driving the Cadillac. The officers saw a man carrying a duffle bag, walking from the grassy area adjacent to 348 Whitson Drive, and stepping onto Buda Street. He was perhaps 30 yards from the officers and was walking toward another vehicle. The officers saw no one else in the vicinity.

Sgt. Lamb yelled at the man to stop, saying that he wished to talk to him. Rather than stop, the man threw the duffle bag into the car. He placed one of his hands on the car door, and his other hand on top of the car; he gave no indication that he intended to comply with the officers' instructions. The officers again told him to stop and to place his hands on top of the car, and once again the man did not comply. Sgt. Lamb testified that the man's actions suggested that he was contemplating either jumping into the car, or running away on foot. Certainly, he gave no indication that he intended to comply with the officers' directive.

The man was wearing a hooded sweatshirt, with a "hand–warmer" pocket on its front.

---

[1] It ultimately was determined that the car was registered to defendant.

Sgt. Lamb observed that the hand-warmer pouch on the front of the man's sweatshirt was sagging, and that there obviously was a heavy object in it. At some point, the man dropped his hands to his stomach area, prompting the officers to become more insistent in their instructions that he stop what he was doing and place his hands on top of the car. Indeed, they drew their weapons. At that point, the man, ultimately identified as defendant herein, complied.

After defendant's hands were placed on top of the car, Sgt. Lamb went to him, placing one of his hands on top of defendant' hands, then using his other hand to frisk or pat down the pocket of the sweatshirt. Sgt. Lamb quickly and easily recognized the bulge for what it was, a handgun.

Defendant was handcuffed, then the officers conducted another pat-down search which revealed 3.8 grams of crack cocaine, assorted pills, and a glass pipe.

It is defendant's position that the call to 911, the substance of which was ultimately relayed to the two officers, did not indicate that the "people" about whom the caller was reporting had committed any criminal acts, nor did the caller to 911 give any description of a vehicle other than it being a blue Cadillac. In other words, defendant argues that there was an insufficient basis for these officers to detain defendant and search him.

A police officer may stop and briefly detain a person for investigative purposes when that officer has a "reasonable suspicion," based on articulable facts, that a crime has been committed or is about to be committed. This, of course, is a so-called *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). *See also, United States v. Sokolow*, 490 U.S. 1 (1989). This

"reasonable suspicion" standard is not a high one because the level of intrusion is slight. *U.S. v. Harris*, 192 F3d 580, 584 (6th cir.1999). Whether there was reasonable suspicion is determined from the totality of the circumstances, *U.S. v. Townsend*, 305 F3d 530 (6th Cir. 2002). Respectfully, defendant's argument that this call to 911 did not justify a brief investigatory detention is a bit unsettling.. People walking about a person's house at 4:00 a.m., especially in today's environment, is reasonably calculated to cause apprehension. Defendant argues that defendant could have been someone merely going to work at 4:00 a.m. in the morning; that certainly is a possibility. Carrying this thought even further, it is hypothetically possible that defendant was up and walking about at this time of day because he could not sleep. On the other hand, it is also just as possible that he was up to no good, which is the basis or justification for brief investigatory detentions under *Terry*.

The Sixth Circuit Court of Appeals has held that a person's presence in a high crime area during the predawn hours provided a "minimal level of objective justification for making [a *Terry*] stop." *Watkins v. City of Southfield*, 221 F.3d 883, 887-8 (6th Cir. 2000).

However, Sgt. Lamb and Officer Parton had far more than defendant's presence at 4:00 a.m. in a known high-crime area; they also had a 911 call from a citizen, who reported that "people" had returned to her area, notwithstanding her previous calls to the police department regarding these same people. Defendant points out that the 911 caller reported "people," as opposed to a single black male. That argument is unpersuasive. First of all, the caller could have used the plural "people" when she intended to refer to a single person; it is not an uncommon misusage of grammar in East Tennessee. More importantly, how could

5

these officers exclude the possibility that the man they observed was was one person of several whom the caller had observed and reported? How could it be determined that other "people" were not behind the building, or in the other car? In fact, there were two people: defendant and a female who was sitting in the car into which defendant tossed the duffle bag. In short, the 911 dispatch was more than sufficient to justify these officers' presence at 348 Whitson Drive, and their brief detention and questioning of anyone on the street in that area. If this call provided in insufficient basis for these officers to do what they did, then it would be pointless to call 911 to report prowlers in the wee hours of the morning.

It is also important to again note that the officers initially only wished to speak with defendant. Defendant did not comply with the officers' repeated instructions to stop and talk, and their observation of the heavy bulge in his sweatshirt pocket, coupled with defendant placing his hands at his stomach, reasonably caused the officers concern for their own safety. A pat-down search for weapons was reasonable, and the handgun was discovered. Once the handgun was discovered, a further pat-down search revealed the drugs and paraphernalia.

In summation, the 911 call , coupled with defendant's presence in a high-crime area at 4:00 in the morning, were articulable facts that gave rise to a reasonable suspicion that criminal activity was afoot. The police are charged not only with the duty of catching individuals who have committed crimes, they also are charged with preventing the commission of a crime whenever possible. Certainly the public so hopes. In this regard, the officers had the right –and duty – to briefly detain defendant and investigate the reason for his presence in this area at this time of night. Defendant's own actions justifiably increased

the officers' suspicions. The resulting pat-down search was not only reasonable, it was prudent.

The evidence in this case was seized as the result of a valid *Terry* -stop. It is respectfully recommended that defendant's motion to suppress be denied.[2]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).