UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:07-CR-93 |
| | ) | |
| MAURICE TRAVON JOHNSON | ) | |

# **O R D E R**

This criminal matter is before the Court to consider the Report and Recommendation of the United States Magistrate Judge dated May 19, 2008. In that Report and Recommendation, the Magistrate Judge recommends that the defendant' motion to suppress be denied. The defendant has filed an objection to this recommendation. [Doc. 28]. After *de novo* consideration of the record as a whole, including the transcript of the hearing on May 16, 2008, and consideration of the Report and Recommendation of the United States Magistrate Judge, and for the reasons set out in that Report and Recommendation, which are incorporated by reference herein, and for the reasons discussed below, it is hereby **ORDERED** that

1

the defendant's objection is **OVERRULED**, that this Report and Recommendation is **ADOPTED** and **APPROVED**, [Doc. 26], with the elaborations below, and that the defendant's motion to suppress be **DENIED.** [Doc. 18].

Newport Police Department Sergeant Scott Lamb testified that on April 14, 2007, the 9-1-1 operator received an emergency call around 4:00 a.m., and the caller reported that "people" in a blue Cadillac, then parked in front of her house, had returned to her house and were walking around it. The caller gave no description of the "people," and Sergeant Lamb testified that this caller had made previous calls that day and the day before, although the nature of the prior complaints is not known. The caller's apartment, which was part of the Newport Housing Authority complex, was located in a "high drug trafficking area," according to Sergeant Lamb. The apartment was a duplex and located at the corner of Whitson Drive and Buda Road.

Sergeant Lamb also testified that he drove a police cruiser to Whitson Drive and parked directly behind a blue Cadillac, which was parked directly across the street from the apartment from which the call originated. He testified that the Cadillac had a flat tire. He further testified that Newport Police Department Officer Rick Parton arrived at the same location in a separate police cruiser and parked directly behind his police cruiser. The two officers exited their vehicles, and Sergeant

Lamb testified that he observed the defendant, who Sergeant Lamb had stopped approximately one month earlier in the blue Cadillac for running stop sign, and no one else, "leaving a grassy area next to the apartment and stepping onto [Buda] Street where a vehicle was stopped." The defendant was carrying a bag, and Sergeant Lamb testified that someone carrying a bag at 4:00 a.m. in that particular area was suspicious.

Sergeant Lamb identified himself as a police officer and asked the defendant to stop. The defendant did not acknowledge the request and continued walking to the car. According to Sergeant Lamb, the defendant walked to the passenger side of the stopped vehicle, opened the door, and threw the bag into the vehicle. Again, Sergeant Lamb requested in a loud voice that the defendant stop. While the defendant stood in the opened-passenger-side doorway, Sergeant Lamb asked the defendant to put his hands up, and the defendant did not comply. Instead, the defendant braced himself "in the door frame and on the top of the door." He was told again to put his hands up, and he again did not comply. Sergeant Lamb testified that he thought the defendant was going to "jump in the car or . . . run." Thus, Sergeant Lamb and Officer Parton drew their guns and ordered the defendant to raise his hands. He eventually complied, but at some point, the defendant put his hands

towards the "middle region of his, of his body," although the record is somewhat unclear as to the exact sequence of events.

When the defendant stepped to the front of the vehicle, Sergeant Lamb observed "a large sag" in the front pocket of the defendant's sweatshirt. Fearing it was a weapon, Sergeant Lamb frisked the defendant for officer safety reasons. The search revealed a handgun, and after defendant was handcuffed, another search revealed crack cocaine, various pills, and a glass pipe. Sergeant Lamb also testified that he had prior interactions with the female driver of the stopped vehicle in which the defendant was attempting to enter. However, she was not engaged in criminal conduct at this particular time.

Officer Parton testified the he knew the person that had made the 9-1-1 call because he had "been there several times." He too testified that, after arriving at the apartment on Whitson Drive, he observed the blue Cadillac and saw the defendant walking away from the vehicle. He later clarified his testimony and stated that the defendant was in the grassy area near the apartment from which the call originated. Officer Parton testified that he and Sergeant Lamb attempted to get the defendant "to quit walking at the time," by asking him to stop. The defendant went to the passenger side of the stopped vehicle and placed the bag he was carrying into the vehicle as if

4

he were about to leave.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." *U.S. Const. Amend. IV*. Under the Fourth Amendment, however, police officers may briefly stop an individual if they have "reasonable suspicion" that the individual has committed a crime. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court first stated that "the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity." *Id*. at 10. "[I]n justifying the intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id*. at 21.

In *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005), the Sixth Circuit reviewed the analytical framework for a *Terry* stop. "In evaluating the constitutionality of a *Terry* stop, we engage in a two part analysis of the reasonableness of the stop." *Id*. at 354. First, the court is to consider "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *Id*. This determination is made in light of the totality of the circumstances, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and requires "the

5

detaining officers [to] have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). An "inchoate and unparticularized suspicion or 'hunch'" will not suffice. *Terry*, 392 U.S. at 27. Furthermore, in considering the totality of the circumstances, the courts must "avoid giving certain factors 'no weight,' because the 'evaluation and rejection of . . . factors in isolation from each other does not take into account the totality of the circumstances." *United States v. Caruthers*, 458 F.3d 458, 465 (6th Cir. 2006) (quoting *Arvizu*, 534 U.S. at 274). Second, if the stop was proper, then the court must determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis*, 430 F.3d at 354 (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).

The United States Magistrate Judge found, based upon his review of the totality of the circumstances, that the initial stop of the defendant was an appropriate *Terry* stop, considering the defendant's suspicious behavior and his presence at 4:00 a.m. in a high drug trafficking area. This Court agrees with that decision, while noting that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person

6

is committing a crime. . . . But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

First, regarding whether there was a proper basis for the stop, the officers responded to a 9-1-1 call, which informed officers that "people" in a blue Cadillac returned to her house and were walking around it. The tip did not describe the people or offer predictive behavior. Thus, the tip was too vague and "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility," *Florida v. J.L.*, 529 U.S. 266, 271 (2000), and it lacked even "moderate indicia of reliability." *Id.* However, the officers were legally in the area to investigate such a call, and though it did not provide an independent basis to stop the defendant, it did allow them to respond to the area and ask questions of individuals who might assist their investigation.

Sergeant Lamb and Officer Parton did just that. When they saw the defendant walking in the vicinity of the blue Cadillac and in the grassy area near the apartment from which the call originated, they attempted to speak with the defendant. Of course, at this point, the defendant was well within his constitutional rights to ignore the officers' requests. *See Florida v. Royer*, 460 U.S. 491 (1983). "[R]efusal

to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). Furthermore, pursuant to *California v. Hodari D.*, a seizure requires the application of physical force or submission to an assertion of authority. 499 U.S. 621 (1991). It is the defendant's actions after this initial request, when viewed in the totality of the circumstances, which provide the officers with a particularized and objective basis for stopping the defendant.

In *Illinois v. Wardlow*, the Supreme Court upheld the stop of a pedestrian, present in a high crime area, who fled from police officers when he saw them. *Wardlow*, 528 U.S. at 124. In addition, the Court stated that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id*. The Sixth Circuit elaborated upon this decision in *United States v. Caruthers*, 458 F.3d at 466-68. The defendant in *Caruthers* argued that his actions were less suspicious than those of the defendant in *Wardlow* because he simply "hurried" away rather than "headlong flight." *Id*. at 466. The Sixth Circuit agreed that "'the speed of the suspect's movements may be relevant in the totality of the circumstances.'" *Id*. (quoting *United States v. Gordon*, 231 F.3d 750, 757 (11th Cir. 2000)). However, Caruthers made other furtive movements, which the police may consider in contributing to the officer's suspicion. *Id.*; *see Florida v. J.L.*, 529 U.S. at 268. The

8

officers observed Caruthers "'hunched down' near a wall, 'kind of leaning toward the ground.'" *Id*. at 467. The court stated that "[b]ending or leaning tends to be more suspicious when accompanied by some other indication of an attempt to conceal contraband or to reach for a weapon, such as arm movements or the sound of an item being moved." *Id*.

Here, the defendant ignored the officers' requests to stop and he continued, albeit at a normal pace, towards a parked car. Upon reaching the car, he placed the bag he was carrying in the back seat of the car, ignoring, again, the officers' requests to stop. Sergeant Lamb stated that he felt the defendant was attempting to flee. Most importantly, the defendant refused to put his hands up when asked to do so. Instead, the defendant braced himself "in the door frame and on the top of the door." He once more was told again to put his hands up, and he did not comply. Finally, the defendant did comply with the officers' requests. Also very important, at some point, the defendant put his hands towards the "middle region of his, of his body." This movement certainly could indicate the defendant was reaching for a weapon.

Considering the totality of the circumstances, following the Supreme Court's instructions to not give "no weight" to factors, this Court FINDS that the officers had a proper basis for the stop because they were aware of specific and

9

articulable facts which gave rise to reasonable suspicion. More specifically, the defendant was present in a high drug trafficking area at 4:00 a.m. near the blue Cadillac, the vehicle mentioned in the 9-1-1 call, and near the apartment from which the call originated. The defendant ignored the officers' repeated requests to stop, walking to his car and placing a bag in the back seat, which could indicate flight and does indicate evasive behavior. The defendant also refused to raise his hands when asked and even reached for the middle section of this body, which could indicate he was reaching for a weapon, and this action is suspicious. Because all of these factors, considering the totality of the circumstances, the officers had a proper basis for the stop.

Regarding the second step of the analysis, this Court **FINDS** that the degree of intrusion was reasonably related in scope to the situation at hand. The officers' conduct, given their suspicions and the surrounding circumstances, was reasonable. Furthermore, the detention did not exceed the purpose and objective of the stop. The bulge in the defendant's sweatshirt was immediately apparent to Sergeant Lamb as soon as the defendant stepped to the front of the vehicle. At that point, the search was conducted and the gun and contraband discovered.

Thus, for the reasons stated, it is hereby **ORDERED** that the defendant's objection is **OVERRULED**, that the Report and Recommendation is **ADOPTED** and

**APPROVED**, [Doc. 26], with the elaborations above, and that the defendant's motion to suppress be **DENIED.** [Doc. 18]. Furthermore, the defendant's Motion to Continue the Plea Deadline, [Doc. 25], is **GRANTED**. It is further **ORDERED** that deadline is extended up to and including July 23, 2008.

    E N T E R:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE